# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JEFFREY LABOW, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 11-1256 (RCL) |
| | ) |
| U.S. Department of Justice, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

### I.   Background

For anyone skeptical of the truth behind the cliché that freedom is not free, FOIA litigation is perhaps one of the best examples of the monetary costs of open government. In this area of law, fights over singular words and individual sentences routinely last several rounds of administrative review and litigation, including volleying between the district and appellate courts. This opinion alone will dedicate several hundred words to examining whether the Federal Bureau of Investigation (FBI) may withhold a single sentence from Mr. Labow on the basis of how it might relate to a pen register used in an investigation more than six years ago. This Court and our Court of Appeals go to great lengths to protect the rights of FOIA plaintiffs – individual citizens who seek to shine the light of transparency upon the operations of their government. Sometimes they successfully prompt the revealing of government misconduct. *See, e.g., Judicial Watch v. U.S. Dep't of Commerce*, 34 F.Supp.2d 28 (D.D.C. 1998). Oftentimes they endeavor to research a topic of personal interest or fulfill a historical curiosity, and may or may not be satisfied by what is released, versus what is withheld. In the process, innumerable resources are poured into balancing

1

the interests of justice that apply in these cases, just as this Court continues to seek the right balance in today's Opinion.

Before the Court are the latest motions and cross-motions for summary judgment concerning the plaintiff's request for disclosure of FBI records about himself, as well as the plaintiff's motion to reconsider an earlier ruling granting summary judgment to the government on several issues. A thorough description of Labow's FOIA request is contained in an earlier opinion in this matter. *Labow v. U.S. Department of Justice*, 66 F.Supp.3d 104 (D.D.C. 2014) ("*Labow I*"), aff'd in part, rev'd in part, vacated in part, *Labow v. United States Dep't of Justice*, 831 F.3d 523 (2016) ("*Labow II*"). In short, in March 2011, Labow requested a copy of "any records pertaining to him" from the FBI. Compl. ¶ 7. After exhausting his administrative remedies, Labow brought suit in the district court in July 2011. The FBI eventually released 624 pages of responsive information, in-whole or in-part, and filed for summary judgment in September 2013, withholding information under FOIA Exemptions 1, 3, 6, and 7. [32]; [32-3] Exhs. G, H, K.

In *Labow I*, the district court granted summary judgment to the government defendants on all issues, including the adequacy of the search and justifications for the claimed Exemptions. On appeal, the D.C. Circuit affirmed the ruling on all but two of the challenged issues,[1] reversing and remanding for further findings as to the FBI's Exemption 3 withholdings pursuant to the Pen Register Act and Federal Rule of Criminal Procedure 6(e). *Labow II*, 831 F.3d at 534.

The government now believes it has cured the infirmaries with its withholding justifications identified by the D.C. Circuit and again moves for summary judgment based on the information it has provided in an updated declaration. Labow has opposed the government's motion, and has likewise filed a cross-motion for summary judgment, arguing that the Pen Register

---

[1] The Circuit also vacated as moot an earlier challenge to the district court's ruling concerning withholdings under Exemption 7(A).

Act's nondisclosure provision is limited to pen register orders themselves, and that information withheld under Rule 6(e) must, on its face and standing alone, necessarily evince a connection to a grand jury.

Before this Court could rule on the summary judgment motions, Labow also filed a Motion to reconsider certain findings for the government in *Labow I* arguing, in essence, that the Court of Appeals' reversal on certain issues simultaneously destroyed the finality of the earlier judgment such that this Court, under Federal Rule of Civil Procedure 54(b), may revisit matters previously decided.

For the reasons stated below, upon consideration of Labow's Motion [72] for reconsideration of the issues decided in *Labow I*, defendant's opposition [76] and Labow's reply thereto [77]; the defendant's Motion for summary judgment [64], Labow's opposition [67] and the government's reply thereto [70]; and Labow's Cross-Motion for summary judgment [68], the defendant's opposition [69] and Labow's reply thereto [71]; the exhibits related to each of the listed filings; the documents produced to the Court *ex parte* for *in camera* review pursuant to its Order of July 25, 2017 [78]; and the entire record in this case with the exception of the non-public version of the Third Hardy Declaration, *see* [47],[2] this Court denies Labow's motion to reconsider the issues decided in *Labow I*, grants the FBI's Motion for summary judgment on the outstanding issues except as to one document (Labow-777), and denies Labow's Cross-motion for summary judgment, except as to that same document.

---

[2] At an earlier stage of this litigation, the district court received the *ex parte* version of the Third Hardy declaration [40-2] for review *in camera*. The Court of Appeals affirmed the district court's review of the document. 831 F.3d at 533-34. Because that declaration did not address any documents still at issue in the case, there was no need to consider it to rule upon the discrete issues still before the Court, and the Court did not do so.

## II.    Legal Standards

### A. Federal Rule of Civil Procedure 54(b)

A district court may revise its own interlocutory decisions "at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed.R.Civ.P. 54(b); *see also Muwekma Tribe v. Babbitt,* 133 F.Supp.2d 42, 47–48 (D.D.C. 2001); *Childers v. Slater,* 197 F.R.D. 185, 190 (D.D.C. 2000). Relief under Rule 54(b) is available "as justice requires." *Alston v. D.C.,* 770 F. Supp. 2d 289, 295-996 (D.D.C. 2011) (citing *Childers,* 197 F.R.D. at 190). *See also* Fed.R.Civ.P. 60(b) Advisory Comm. Notes ("interlocutory judgments are ... left subject to the complete power of the court rendering them to afford such relief from them as justice requires.").

The qualification that relief may only be granted "as justice requires" indicates concrete considerations of whether the court "has patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning, but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the court." *Cobell v. Norton,* 224 F.R.D. 266, 272 (D.D.C. 2004) (internal citation omitted).

Although the law of the case doctrine does not automatically apply to interlocutory decisions, *Langevine v. Dist. of Columbia,* 106 F.3d 1018, 1022–23 (D.C. Cir. 1997), the court uses its underlying rationale in a Rule 54(b) analysis. *See Burlington Ins. Co. v. Okie Dokie, Inc.,* 439 F. Supp. 2d 124, 131-32 (D.D.C. 2006). That doctrine, which "posits that when a court decides upon a rule of law, that decision should [generally] continue to govern the same issues in subsequent stages in the same case," *Arizona v. California,* 460 U.S. 605, 618 (1983), is applicable "as much to decisions of a coordinate court in the same case as to a court's own decisions."

*Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 816 (1988) (citations omitted). The law of the case doctrine dictates that a district court cannot reconsider on remand an issue decided by an appellate court. *See Insurance Group Comm. v. Denver & Rio Grande W. R.R.,* 329 U.S. 607, 612 (1947); *Griffin v. United States,* 935 F. Supp. 1, 5 (D.D.C. 1995) (*citing* J.W. Moore, 1B *Moore's Federal Practice,* ¶ 0.404[1] at p. II–3 (2nd ed. 1994) ("[w]hen a case is appealed and remanded, the decision of the appellate court establishe[s] the law of the case, which must be followed by the trial court on remand.").

### B. Summary Judgment on FOIA Exemption 3

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PRO. 56(a). As applied in a FOIA case, an agency defendant may be entitled to summary judgment if it demonstrates that 1) no material facts are in dispute, 2) it has conducted an adequate search for responsive records, and 3) each responsive record that it has located has either been produced to the plaintiff or is exempt from disclosure. *Miller v. U.S. Dep't of Justice,* 872 F. Supp. 2d 12, 18 (D.D.C. 2012) (*citing Weisberg v. DOJ,* 627 F.2d 365, 368 (D.C. Cir. 1980)). As to the third prong, this Court determines *de novo* whether an agency has properly withheld information under a claimed FOIA exemption. *See Mead Data Cent., Inc. v. Dep't of Air Force,* 566 F.2d 242, 251 (D.C. Cir. 1977). An agency claiming an exemption to FOIA bears the burden of establishing that the exemption applies. *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill,* 443 U.S. 340, 352 (1979), and "the underlying facts are viewed in the light most favorable to the [FOIA] requester." *Weisberg,* 705 F.2d at 1350. Exemptions must be narrowly construed. *FBI v. Abramson,* 456 U.S. 615, 630, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982).

The agency must supply "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Cent.*, 566 F.2d at 251. The requisite specificity "imposes on the agency the burden of demonstrating applicability of the exemptions invoked *as to each document or segment withheld.*" *King v. U.S. Dep't of Justice*, 830 F.2d 210, 224 (D.C. Cir. 1987) (emphasis original). Though the affidavits need not contain factual descriptions the public disclosure of which would endanger the agency's mission, *Vaughn v. Rosen*, 484 F.2d 820, 826-27 (D.C. Cir. 1973), they must feature "the kind of detailed, scrupulous description [of the withheld documents] that enables a District Court judge to perform a de novo review." *Church of Scientology of Cal., Inc. v. Turner*, 662 F.2d 784, 786 (D.C. Cir. 1980). "Agency affidavits are accorded a presumption of good faith." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991); *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981).

Of the enumerated exemptions in the FOIA, Exemption 3 is the only one at issue here. Exemption 3 allows an agency to withhold records that are specifically exempted from disclosure by statute under conditions dictated by the FOIA. An Exemption 3 statute must either (i) require that the relevant "matters be withheld from the public in such a manner as to leave no discretion on the issue;" or (ii) establish "particular criteria for withholding or refer[] to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A). The Pen Register Act, 18 U.S.C. § 3123(d), and Federal Rule of Criminal Procedure 6(e), are such statutes. *See Labow II*, 831 F.3d at 527 (finding the Pen Register Act to satisfy subpart (ii), without examining subpart (i)); *Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 867-68 (D.C. Cir. 1981) (finding Rule 6(e) qualifies as an Exemption 3 statute under what is now subpart (i), without

examining subpart (ii)). When reviewing Exemption 3 claims, this Court seeks to balance the inherent tension between the public's interest in government goings-on with the protection of an agency's legitimate, and statutorily recognized need for secrecy in certain matters. *See Miller*, 872 F. Supp. 2d at 22.

## III.  Analysis

### A. Plaintiff's Rule 54(b) Motion

Labow essentially argues that Rule 54(b) is available to him due to the issues awaiting resolution in this case. Those issues, however, result from a remand with specific instructions from the Court of Appeals, not from the district court's leaving anything undecided before its ruling was appealed. The D.C. Circuit, in affirming certain findings of the district court on de novo review, did not affect the finality of the district court's judgment on the merits as to those issues when it vacated the others. Under Labow's reasoning, the potential for relief under Rule 54(b) would be reinvigorated any time the Court of Appeals or Supreme Court remands any issue for further findings. This Court disagrees, and nevertheless declines to exercise any discretion it may have here.

"[A]s a rule courts should be loathe to [revisit its prior rulings] in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Christianson*, 486 U.S. at 817 (quoting *Arizona*, 460 U.S. at 618, n. 8). Further, whatever discretion a district court has under Rule 54(b) to reconsider its own rulings, if not eliminated entirely after an appellate ruling, *see Insurance Group Comm.*, 329 U.S. at 612, certainly must be exercised with even greater caution in light of the blessing from above. Nevertheless, Labow has not demonstrated a manifest injustice here. In its earlier decision, the district court neither misunderstood his arguments, nor did it render its ruling based on extraneous

considerations. *See Cobell*, 224 F.R.D. at 272. Nor did it err in reasoning or apprehension, nor has there been a significant change in the facts of the case or controlling law. *Id*. Mr. Labow's motion is thus not merely out of time, but would fail substantively in any event.

Mr. Labow likewise is not entitled to relief under either of the other two provisions that could apply to such motions: Federal Rules of Civil Procedure 59(e) and 60(b). A motion under Rule 59(e) to alter or amend a judgment must be filed within 28 days of the judgement, FED. R. CIV. P. 59(e), and "need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1296 (D.C. Cir. 2004) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam)). No motion was filed within 28 days of the district court's ruling and, failing to meet the more liberal standard of Rule 54(b), Mr. Labow also would fail under Rule 59(e). Rule 60(b) motions for relief from a judgment may be filed "within a reasonable time," FED. R. CIV. P. 60(c), and must meet specific criteria to merit relief. Although the "reasonable time" standard is not defined in the Rule, in no circumstance could it extend beyond the appeal of the judgment at issue in the motion.

### B. Exemption 3 Withholdings

Currently on remand is the FBI's withholding of two subcategories of Exemption 3 claims: those made under the Pen Register Act and those made pursuant to Federal Rule of Criminal Procedure 6(e). Exemption 3 is unique among FOIA exemptions in that its applicability is triggered by any of a number of federal statutes, not merely the information in the responsive documents themselves. *See Association of Retired R.R. Workers, Inc. v. U.S. R.R. Retirement Bd.*, 830 F.2d 331, 335-36 (D.C. Cir. 1987). The FOIA places a significant burden on a government agency claiming any of its exemptions, and demands that agency defendants meticulously provide

8

details for each withholding claimed in every instance such that a district court may fairly review those claims *de novo*. A standard practice across the government therefore is to identify the specific statute that empowers it to assert Exemption 3 in a given instance. *Cf.* First Hardy decl. at ¶¶ 36-37 (listing sub-categories of withholdings, including those under Exemption 3, which specify the triggering statutes, to help explain the FBI's rationale for each withholding). Rarely – and only in cases in which national security would be compromised – does the government seek not to specify in public filings its specific statutory basis or bases for such withholdings. *See* Dep't of Justice Guide to the Freedom of Information Act (2009 ed.) at *215 n. 37 and accompanying text.[3]

Congress intended FOIA to "permit access to official information long shielded unnecessarily from public view." *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011) (quoting *EPA v. Mink*, 410 U.S. 73, 80 (1973)). The obvious corollary is the recognition that the proper function of government depends upon some measure of secrecy in certain affairs. Some law enforcement information and investigatory proceedings are among those matters that Congress has found fit to qualify for such secrecy, and hypothetically might be properly withheld under any one of several FOIA exemptions.

An abiding principle of FOIA disclosures that applies with equal heft to Exemption 3 is that an agency need not endanger its own mission through its FOIA disclosures and justifications for withholdings. *See Vaughn,* 484 F.2d at 826-27. For the FBI, that mission includes investigating crimes and bringing evidence before grand juries in support of federal prosecutors seeking indictments. In this case, the FBI withheld information from the plaintiff that it says would either reveal the target of a pen register order, or reveal protected information about grand jury

---

[3] Available at https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/exemption3_0.pdf.

proceedings. It did so, first, by specifying which statute gave rise to each of its Exemption 3 claims, and second, by further explaining its rationale in a series of declarations that comport with standard FOIA litigation practice. Necessarily then, the FBI's assertion of withholding authorities pursuant to the Pen Register Act and Rule 6(e) revealed the existence of one or more pen registers and one or more grand jury proceedings that produced information otherwise responsive to Mr. Labow's FOIA request for records about himself. This Court must now decide whether the FBI has improperly withheld a) information that appeared in a document other than a pen register order that nevertheless revealed the target of the pen register, or b) documents connected to a grand jury proceeding that the earlier, less developed record in this case did not make clear how they might reveal something about the grand jury's investigation.

     a.   Withholdings Under Pen Register Act Withholdings

The Pen Register Act provides for non-disclosure of the existence of a pen register. Specifically, the statute requires that a pen register order "be sealed until otherwise ordered by the court," and that certain individuals who become privy to a pen register's existence may not make its existence known to others. 18 U.S.C. § 3123(d). The D.C. Circuit agreed with the district court that § 3123(d), meets the requirements of an Exemption 3 statute, but remanded for an assessment as to "whether the specific information withheld in this case is protected by" the Act. *Labow II*, 831 F.3d at 529.

The FBI here is not protecting a sealed pen register order itself, but is instead withholding information that would reveal "pen register results obtained on a specific date, the identity of a third party's phone number registration, as well as the name of another third party individual potentially using the same phone number." Fourth Hardy decl. at ¶¶ 6-7. It argues the withholding to be in accord with the "clear intent" of Exemption 3, which is "to prevent the target of [a pen

10

register] order from knowing that he/she has been targeted." *Id.* at ¶ 8. For his part, Labow seizes on the D.C. Circuit's language expressing skepticism about Exemption 3's coverage of material beyond the sealed pen register order itself.

In the Pen Register Act, the language 'unless otherwise ordered by the court' connotes two related principles. First, it provides the Court discretion with respect to an order's unsealing. *See Washington & G.R. Co. v. Tobriner*, 147 U.S. 571, 588-89 (1893); *Saunders v. Washington Metropolitan Area Transit Authority*, 505 F.2d 331, 333 (D.C. Cir. 1974) (examining the soundness of the district court's exercise of its discretion pursuant to an 'unless otherwise ordered by the court' provision); *Rector v. Mass. Bonding & Ins. Co.*, 191 F.2d 329, 333 (D.C. Cir. 1951) (noting the effect of a rule including the phrase "unless otherwise ordered by the court" vests discretion in the court.). Second, FOIA litigation could, potentially, prompt the Court to exercise its discretion to unseal a given order.[4]

The mere existence of a pen register order does not allow the FBI to automatically withhold or redact other documents that may coincidentally contain the same information that appears in the order. *See Labow II*, 831 F.3d at 528 ("Exemption 3 of FOIA, as regards the Pen Register Act, primarily authorizes the government to withhold a responsive pen register order itself, not all information that may be contained in or associated with a pen register order."). But Exemption 3 allows an agency to withhold information for which Congress has recognized a danger associated with its disclosure. *Am. Jewish Cong. v. Kreps*, 574 F.2d 624, 628–29 (D.C. Cir. 1978) ("Nondisclosure is countenanced by [subpart (ii)] if, but only if, the enactment is the product of congressional appreciation of the dangers inherent in airing particular data and incorporates a

---

[4] Recall that the D.C. Circuit has determined the Pen Register Act as an Exemption 3 statute under the exemption's second subpart. 831 F.3d at 527. That is, the Pen Register Act "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A)(ii). This differs from the first subpart, which imposes substantive limits on a court's discretion to order disclosure.

formula whereby the administrator may determine precisely whether disclosure in any instance would pose the hazard that Congress foresaw."). Congress specifically recognized the dangers of disclosing information contained in a pen register order in such a manner that doing so would undermine the very purpose for the secrecy of the order, and Congress expects such disclosure to be, in certain instances, punished as contempt of court. *See also* H. Rep. No. 99-647, to accompany H.R. 4952, June 19, 1986, at * 77 ("Intentional violations of the non-disclosure provisions may be, in appropriate circumstances, punishable as contempt");[5] S. Rep. No. 99-541, to accompany S. 2575, Oct. 17, 1986 at *47 (same).[6]

When Congress narrowed the scope of Exemption 3 in 1976, it did so to eliminate from the Exemption's scope "statutory language granting vast discretion over vast materials." *Ass'n of Retired R.R. Workers*, 830 F.2d at 333. Information at the crux of a pen register order that, as here, happens to appear in a document outside of the order itself and would necessarily compromise the order, is therefore information that falls within the scope of Exemption 3's protection as triggered by the Pen Register Act. This Court and other courts in this district have accordingly and consistently held that "information regarding the target of pen registers, and reports generated as a result of the pen registers" is information that "falls squarely under" the Pen Register Act. *Brown v. FBI*, 873 F.Supp.2d 388, 401 (D.D.C. 2012); *Jennings v. FBI*, no. 03-cv-1651 (D.D.C. 2004) (Bates, J.) at *11-12 ("since the [pen register] log sheets would by necessity reveal existence of these devices, they are exempt from disclosure by statute and by Exemption 3."); *Sennett v. Dep't of Justice*, 962 F.Supp.2d 270, 282-83 (D.D.C. 2013) (Boasberg, J.); *Roberts v. FBI*, 845 F.Supp.2d 96, 101-02 (D.D.C. 2012) (Bates, J.). This Court finds that the single sentence the FBI withheld

---

[5] https://www.justice.gov/sites/default/files/jmd/legacy/2013/10/16/houserept-99-647-1986.pdf
[6] https://www.justice.gov/sites/default/files/jmd/legacy/2014/08/10/senaterept-99-541-1986.pdf

from Labow pursuant to the Pen Register Act does contain information that is protected by the Act, and is properly withheld.

To the extent the FBI attempts now to assert Exemption 7(E) to withhold the same information, *see* Fourth Hardy decl. at ¶¶ 10-11, the Court rejects its claim as untimely. A hallmark of FOIA litigation is that the government generally must claim all applicable exemptions at the same time. *See, e.g., Maydak v. U.S. Dep't of Justice*, 218 F.3d 760, 764-65 (D.C. Cir. 2000); *Ryan v. DOJ*, 617 F.2d 781, 792 (D.C. Cir. 1980) ("an agency must identify the specific statutory exemptions relied upon, and do so at least by the time of the district court proceedings."). Just as the FBI argued Mr. Labow's motion for reconsideration is late by a factor of years, so, too, is the FBI's use of Exemption 7(E) over the information at-issue here.

### b. Rule 6(e) Withholdings

The FBI also seeks to withhold 35 pages of grand jury-related materials under Federal Rule of Criminal Procedure 6(e).[7] Determining that the district court did not provide an adequate basis for determining why withheld grand jury records "would reveal anything about the investigation," 831 F.3d at 529, the Court of Appeals remanded "to consider whether the release of the documents subpoenaed by the grand jury would reveal something about the grand jury investigation." *Id.* at 530. Importantly, the Circuit instructed this Court to examine, *ex post*, whether the documents heretofore withheld under Rule 6(e) would have revealed something about the workings of the

---

[7] 371 additional pages are either withheld in-full or redacted concurrently pursuant to Exceptions 6 and/or 7(C). Fourth Hardy decl. at ¶ 13. Because the FBI's application of those exceptions has already been affirmed on appeal, *see Labow II*, the Court need not reexamine those assertions at this stage of the litigation since, even if this Court were to find against the FBI on its Rule 6(e) withholdings, those pages would still be withheld from disclosure. The Court notes, however, that just as the law of the case doctrine has benefited the FBI here, it is, by its very name and nature, limited to the present matter. Should these same documents be relevant to an unrelated future FOIA request, the FBI cannot rely solely on the courts' rulings in the present matter to withhold those same documents absent proper processing in light of the facts and circumstances of the potential future case.

grand jury if they had simply been released *before* the FBI first asserted the authority to withhold them. *Id.*

Although a procedural rule, Congress affirmatively enacted Rule 6(e) in such a way as to qualify it as a provision under which an agency may claim Exemption 3 withholdings. The law of this Circuit has long settled that "the rule's ban on disclosure is for FOIA purposes absolute" because the Rule satisfies the first of the two subparts of the FOIA that allow for such withholdings. *Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 868 (D.C. Cir. 1981) ("[Rule 6(e)] makes quite clear that disclosure of matters occurring before the grand jury is the exception and not the rule. It further sets forth in precise terms to whom, under what circumstances and on what conditions grand jury information may be disclosed. Any disclosure to persons outside of the government may only be made pursuant to a court order. Fed.R.Crim.P. 6(e)(3)(C). Therefore, the rule's ban on disclosure is for FOIA purposes absolute and falls within [current subpart (i)] of Exemption 3") (citing *Am. Jewish Cong.*, 574 F.2d at 628). In other words, Rule 6(e) requires that grand jury matters "be withheld from the public in such a manner as to leave no discretion on the issue." 5 U.S.C. § 552(b)(3)(A)(i). This Circuit has not examined whether Rule 6(e) might also qualify under the second subpart of the Exemption 3 provision, that is, whether it "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A)(ii).

Included in the earlier case record considered by the Court of Appeals were two FBI declarations, which represented that the documents withheld under Rule 6(e) included the names of recipients of federal grand jury subpoenas, specific identifying information concerning records subject to grand jury subpoenas, and the records provided in response to grand jury subpoenas. First Hardy decl. at para 74; Second Hardy decl. at para 11. The latter of the two declarations also

clarified that "documents obtained by the FBI independently of a grand jury were not withheld pursuant to Exemption 3." Second Hardy decl. at para 11. The district court found the withholding proper under Rule 6(e) because the material described in the declarations "would tend to reveal the strategy or direction of the investigation." *Labow I*, 66 F.Supp.3d 104, 121 (quoting *Senate of the Commonwealth of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987). The Court of Appeals found the FBI's explanation uncompelling and district court's finding insufficient, saying it had no basis for knowing "why documents obtained *through*" grand jury subpoenas "would necessarily reveal" their connection to a grand jury. 831 F.3d at 530 (emphasis original).

After the Court of Appeals' decision, the FBI supplemented the record with an additional affidavit. As relevant here, the latest declaration mostly just repeats the same representation the Court of Appeals previously found to be inadequate. *Compare* Fourth Hardy decl. at para 14 ("Specifically, the investigative records contain information about the names of recipients of Federal Grand Jury subpoenas; information that identifies specific records subpoenaed by a Federal Grand Jury; and copies of specific records provided to a Federal Grand Jury in response to Federal Grand Jury subpoenas."), *with* First Hardy decl. at para 74; Second Hardy decl. at para 11. A significant portion of the latest declaration merely echoes, if a bit more emphatically, the accompanying characterizations of the material withheld that it had made previously. It asserts, "Release of any of the information at issue here would leave no doubt in plaintiff and/or the general public's mind that the information in fact pertains to Grand Jury related matters . . . .Due to direct reference to the words 'Grand Jury' on some of the withheld and/or immediately preceding pages . . .the direct connection can be easily and logically identified and/or deduced." Fourth Hardy decl. at para 14.

Although these assertions read like conclusory language better left to argument by counsel, they are arguably consistent with the demand that agencies "identify[] the reasons why a particular exemption is relevant." *Mead Data Cent., Inc. v. Dep't of Air Force,* 566 F.2d 242, 251 (D.C. Cir. 1977). There are, however, at least two shortcomings with the FBI's assertion. First, it is, like the purely factual representations previously noted, practically identical in substance to what the Court of Appeals previously considered. *See* First Hardy decl. at para 74 ("Any disclosure of this information would clearly violate the secrecy of the grand jury proceedings and could reveal the inner workings of a federal grand jury. . . ."); Second Hardy decl. at para 11 ("This information would expose the inner workings of the grand jury and violate the secrecy of grand jury proceedings by revealing the focus and scope of the grand jury's investigation."). Second, its use of prospective language, *i.e.*, "would leave no doubt," and "can be easily and logically identified" fails to address the Circuit's direction that this Court consider the effect of releasing the information *prior to* the FBI's claiming Exemption 3 authority to withhold it. 831 F.3d at 530. Under the law of the case, this Court therefore must concern itself with whether release *would have left* no doubt in the plaintiff's mind that the information pertains to grand jury matters, and whether the documents' direct connection to the grand jury *could have been* identified at an earlier time.

To be fair to the FBI, it never before has been taken to task for justifying its Rule 6(e) withholdings with exactly the type of justification that it proffered in this case. Courts in this district have, for years, consistently upheld the FBI's withholding of this type of information under Rule 6(e). *See, e.g., Sennett v. Dep't of Justice,* 962 F.Supp.2d 270, 283-84 (D.D.C. 2013) (JEB); *Brown v. F.B.I,* 873 F.Supp.2d 388, 401 (D.D.C. 2012) (RCL); *Kishore v. DOJ,* 575 F. Supp. 2d 243, 255 (D.D.C. 2008) (RMC) (*aff'd,* 2009 WL 2762823 (D.C. Cir. 2009)); *Singh v. FBI,* 574 F. Supp. 2d 32, 45 (D.D.C. 2008) (RJL); *Peay v. DOJ,* No. 04-1859, 2007 WL 788871, at *3-4 (D.D.C. Mar. 14, 2007) (CKK); *Jennings v. FBI,* No. 03-cv-1651, at *12 (D.D.C. 2004) (JDB); *Brunetti v. FBI,* 357 F. Supp.

2d 97, 105 (D.D.C. 2004) (RJL). This Court similarly would have been inclined to agree with Judge Rothstein's decision to credit the FBI's description of the information it has withheld here under Rule 6(e). *See also Morley v. C.I.A.*, 508 F.3d 1108, 1116 (D.C. Cir. 2007) (a district court may rely on agency affidavits that are relatively detailed and nonconclusory).

The only material additional information the FBI provided in its latest declaration is that the withheld records include the "subpoenas themselves, returns on subpoenas, and discussions of subpoena returns incorporated into FBI-created documents (302s and ECs)." Fourth Hardy decl. at para 13.[8] This sentence, however, is important. Grand jury subpoenas themselves, on their face, reveal something critical about the grand jury's investigation – its targets and/or the direction of the investigation. Likewise, too, for returns on subpoenas, if identified as such on the document, and discussions of those returns in internal FBI documents, if those discussions describe their connection to a grand jury.

To develop a definitive record in this matter, the Court exercised its discretion to order the FBI to file, *ex parte*, those documents still at-issue in this case, for *in camera* review. [78] The Court has reviewed the FBI's proposed withholdings and determined that, with one exception, the information, if released, would indeed "tend to reveal some secret aspect[s] of the grand jury's investigation." *Lopez v. Dep't of Justice*, 393 F.3d 1345, 1349. The information and documents at issue are consistent with the FBI's previous representations in this case and, aside from the one exception, the agency's withholdings are reasonable and narrowly tailored to protect information that Congress intended be protected, because they would, in fact, tend to reveal targets and/or the direction of one or more grand jury investigations.

---

[8] The declaration also further identifies a single document, "Labow-776," not previously mentioned specifically, as a grand jury subpoena, *id.*, but unless the FBI wished the Court to grant its summary judgment motion only as to that document, singling it out does little to help its case here, given the Court of Appeals' decision.

The noted exception relates to document number Labow-777. That document, originally produced to Labow fully redacted, is a copy of a letter sent from the U.S. Attorney to a subpoena target. The body of the letter itself contains a sunset date concerning the subpoena's non-disclosure requirement, which lapsed several years ago. Although the FBI may properly withhold under Rule 6(e) the specific information about the target of the subpoena and the information identifying the Assistant U.S. Attorney who issued the letter, the Court finds the FBI has not provided an adequate justification for withholding the body of the U.S. Attorney's letter. As to Labow-777, therefore, the Court denies the defendant's Motion for summary judgment, and grants the plaintiff's Cross-motion for summary judgment.

The Court notes that issue of redactions on documents withheld-in-full with respect to Rule 6(e) is a precarious one, since to protect the grand jury information at issue, it is not merely certain substance that may be redacted, but also context, *i.e.*, the document's or information's connection to the grand jury. Redacting a heading or exhibit stamp, for example, accompanied by a Rule 6(e) justification, itself reveals that the produced document relates somehow to a grand jury proceeding. The FOIA's strong preference for disclosure cannot be read in such a way as to potentially punish agencies for complying with its mandate, which includes that agencies specify, with as much detail and to the maximum extent possible, their justifications for their withholdings. *See King v. U.S. Dep't of Justice*, 830 F.2d 210, 224 (D.C. Cir. 1987); *Mead Data Cent.*, 566 F.2d at 251. This includes specifying the statutes that authorize them to withhold certain information under Exemption 3.

Indeed, Rule 6(e) may be unique in this regard, in that some of the material covered by the rule might never be permissibly withheld concurrently under another exemption. If an agency were to withhold information based on classified statutory authority, for example, that same

information likely would also be protected under Exemption 1. And although an agency cannot be expected to forego asserting an exemption it is authorized by statute to assert, for fear that asserting it will itself reveal something that ought to be protected, it might nevertheless choose to do so for strategic purposes. The agency's alternative is to file classified materials *ex parte, in camera*, a course of action that ought not be preferred by the agency nor by the court. *Cf. Haddam v. FBI*, No. 01-434, slip op. at 28 (D.D.C. Sept. 8, 2004) (declining to identify the Exemption 3 statute underlying the proper withholding of national security information); *Simpson v. Dep't of State*, No. 79-0674, 2 Gov't Disclosure Serv. (P-H) ¶ 81,280, at 81,798 (D.D.C. Apr. 30, 1981) (same).

In a scenario such as the one presented in this case, *i.e.*, a request for information that has a logical nexus to a potential criminal investigation, if the FBI were to, for example, merely redact "grand jury" stamps from pages and produce the remaining content that might not directly refer to the grand jury proceeding, the agency would still have to claim Exemption 3, and specify Rule 6(e) in its justification for the redaction. That, in turn, would "necessarily evince [the documents'] connection to a grand jury." *Labow II*, 831 F.3d at 530. Leaving the specific Rule 6(e) justification out of public documents would not solve the problem, because (especially if this scheme were to be institutionalized) a requester would necessarily be able to deduce that the law enforcement agency's only Exemption 3 withholding authority that it would decline to specify on the public record in an instance like this would be Rule 6(e).

At the same time, the law should not incentivize the FBI simply to stamp "grand jury" on documents and withhold them accordingly. Original FBI documents, copies of which are later submitted to the grand jury (and are stamped and marked accordingly upon their processing and submission), do not fall under the protection of Rule 6(e). *See also Labow II*, 831 F.3d at 529-30 ("[S]ubpoenaed documents would not necessarily reveal a connection to a grand jury. . . . The mere fact the documents were subpoenaed fails to justify withholding under Rule 6(e).").

Rule 6(e) has been determined to qualify as an Exemption 3 statute because it leaves agencies "no discretion" to disclose to a FOIA requester information that falls within its scope. *Fund for Constitutional Gov't*, 656 F.2d at 867-68. With the noted exception of Labow-777, this Court finds the information withheld to fall squarely within the scope of Rule 6(e), and is therefore properly withheld by the FBI.

In the alternative, the Court finds that Rule 6(e) also qualifies as an Exemption 3 withholding statute under the second prong, in that it "refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A)(ii). Under a subpart (ii) statute, the Court balances the public's (and plaintiff's) interest in transparency, with an agency's legitimate, statutorily recognized need for secrecy. *Cf. Miller*, 872 F.Supp. 2d at 22. The grand jury material the FBI seeks to withhold here is directly connected to the type of matter, the secrecy of which Rule 6(e) is designed to protect. And here, it is not merely the FBI's secrecy interest at stake, *see also Vaughn*, 484 F.2d at 826-27 (an agency need not disclose information that would endanger its mission), but also that of a grand jury. The balance weighs heavily in favor of withholding the information at-issue as the FBI has done, because revealing the information would implicate the workings of a grand jury and potentially compromise a criminal investigation.

## IV. **Conclusion**

For the foregoing reasons, the FBI's Motion for summary judgment is GRANTED, except as to document 'Labow-777,' for which it is DENIED as described above; Mr. Labow's Cross-motion for summary judgment is DENIED, except as to document 'Labow-777,' for which it is GRANTED as described above; and Mr. Labow's Motion for reconsideration is DENIED.

A separate Order shall accompany this Opinion.

Date: 8/16/17

Royce C. Lamberth
United States District Judge